## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BRUNSWICK GMBH,                   )
                                  )
        Plaintiff,                )
                                  )
    v.                            )          Case No. 07-471 (JFF)
                                  )
BOWLING SWITZERLAND, INC.,        )
                                  )
        Defendant.                )

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS

Arthur G. Connolly, III (#2667)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
(302) 658-9141

*Attorneys for Bowling Switzerland, Inc.*

DATED:   November 8, 2007

## TABLE OF CONTENTS

**Page**

Table of Contents .................................................................................................. i

Table of Authorities ............................................................................................. ii

Introduction ........................................................................................................1

Argument ...........................................................................................................2

    I.    This Case Should be Dismissed Under the Doctrine of Forum Non Conveniens ...2

        A.    Switzerland is an adequate alternative forum .............................................3

        B.    As a foreign entity, Plaintiff's choice of forum deserves less deference.....4

        C.    The balance of private and public favors favor dismissal............................6

    II.    This Case Should Be Stayed Pending Resolution of the Swiss proceeding ............7

Conclusion .........................................................................................................8

# TABLE OF AUTHORITIES

**Cases**:

*Banco Nominees Ltd v. Iroquois Brands, Ltd.,*
    748 F. Supp. 1070 (D.Del. 1990)................................................................................7

*Dahl v. United Techs. Corp.,*
    632 F.2d 1027 (3d Cir. 1980)................................................................................2

*Gulf Oil v. Gilbert,*
    330 U.S. 501 (1947)................................................................................2

*Lacey v. Cessna Aircraft Co.,*
    932 F.2d 170 (3d Cir. 1991)................................................................................3

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981)................................................................................3, 4, 5, 6

*Van Cauwenberghe v. Biard,*
    486 U.S. 517 (1988)................................................................................6

## Introduction

Defendant Bowling Switzerland, Inc. ("Bowling Switzerland" or "Defendant"), by and through its counsel, respectfully submits its reply brief in support of its motion to dismiss this case on the grounds of forum non conveniens or, in the alternative, to stay this litigation pending resolution of a related proceeding pending in Switzerland (the "Motion") (D.I. 8).

As set forth below, Plaintiff's arguments against the Motion are flawed, and, in a number of instances, internally inconsistent. Contrary to Plaintiff's position, this action is precisely the type of case the doctrine of forum non conveniens is meant to protect against. Moreover, as a foreign entity, Plaintiff Brunswick GmbH's ("Brunswick GmbH" or "Plaintiff") choice of forum should be afforded less deference by this Court than a domestic plaintiff's choice of forum. At a minimum, it is respectfully submitted that this action should be stayed pending completion of the debt enforcement proceeding initiated by Plaintiff in Switzerland.

## Argument

### I.    This Case Should be Dismissed Under the Doctrine of Forum Non Conveniens

The United States Supreme Court described the doctrine of forum non conveniens in *Gulf Oil v. Gilbert*:

> The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself . . . .
>
> If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial . . . .

330 U.S. 501 at 507, 508 (1947); *see also Dahl v. United Techs. Corp.,* 632 F.2d 1027, 1029 (3d Cir. 1980) ("[t]he principle of forum non conveniens permits a court to decline jurisdiction even though venue and jurisdiction are proper, on the theory that for the convenience of the litigants and the witnesses, [the] action should be tried in another judicial forum.").

In this action, the relative advantages and obstacles to a fair trial weigh heavily in favor of Brunswick GmbH and strongly against Brunswick Bowling.

2

### A.    Switzerland is an adequate alternative forum.

As a threshold inquiry, in deciding a motion to dismiss for forum non conveniens, this Court must determine whether an adequate alternative forum exists. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, at 255 n.22 (1981). As set forth in Defendant's Opening Brief, an adequate alternative forum exists when the defendant is amenable to process in the other jurisdiction, as Defendant is here with respect to Switzerland. *See Lacey v. Cessna Aircraft Co*., 932 F.2d 170, 180 (3d Cir. 1991). Plaintiff does not, nor could it argue that Bowling Switzerland is not amenable to process in Switzerland. Rather, Plaintiff makes two unconvincing arguments with respect to the alternative forum.

First, Plaintiff argues that it does not have "an adequate alternative forum." Defendant's Answering Brief at 6. This argument is contradicted by the sworn statement of Franz Szolansky, submitted by Plaintiff, in which Mr. Szolansky states, "Brunswick GmbH now has the option, but is not required, to initiate a judicial proceeding against Bowling Switzerland in the Swiss courts to collect the debt demanded to be paid in th[e] 'Commandement de Payer.'" Szolansky Affidavit ¶8.[1]

Second, Plaintiff would have this Court believe that it has served the equivalent of a "demand letter" in Switzerland and nothing more. *See* Plaintiff's Answering Brief at 3. As set forth in Defendant's Opening Brief and in the Affidavit of Gaspard Couchepin at ¶8 ("Couchepin Affidavit") (attached hereto as Exhibit A), in Switzerland a proceeding to enforce an unsecured claim is initiated with the filing of an "enforcement request" with a Swiss debt enforcement office. In this case, Plaintiff made an enforcement request with the Office des Poursuites et

---

[1] While Mr. Szolansky's statement makes it clear that an adequate alternative forum exists in Switzerland, his statement is wrong to the extent it implies Brunswick GmbH has not already initiated a debt enforcement proceeding in Switzerland.

Faillites de Nyon-Rolle. *Id.* On January 26, 2007, the Office des Poursuites et Faillites, **not** Plaintiff, issued a "Commandement de payer" (a summons to pay) to Bowling Switzerland. *Id.* ¶9. On January 29, 2007, Bowling Switzerland made its objection (*i.e.*, opposition) to the summons to pay in accordance with Swiss law. *Id.* ¶10. At this point, under Swiss law, Plaintiff could have applied for a summary proceeding at the Tribunal d'arrondissement de la Côte in Nyon to set aside Defendant's objection. *Id.* This is an expedited proceeding in which the Judge will consider only written proofs, with no opportunity for the parties to present witnesses. *Id.* The court sets aside the objection provisionally unless the debtor immediately shows *prima facie* evidence that it has a defense. *Id.* The court must render its decision with 5 days. *Id.* If the objection is provisionally set aside, Defendant has 20 days to file an ordinary court action for a negative declaration of debt. *Id.* If the Defendant does not file an action within 20 days or if the action for negative declaration is set aside, Plaintiff is free to commence seizure or bankruptcy proceedings in Switzerland. *Id.* Inexplicitly, having initiated an enforcement proceeding in Switzerland, Plaintiff has failed to exercise its summary rights in that proceeding, even though most or all of Defendant's assets are located in Switzerland; and Plaintiff could obtain a judgment against Defendant in a short, summary proceeding (assuming for purposes of argument only, that Plaintiff's allegations are true).

**B.      As a foreign entity, Plaintiff's choice of forum deserves less deference.**

Defendant does not dispute the proposition that ordinarily, there is a strong presumption in favor of a plaintiff's choice of forum; however, Defendant respectfully takes issue with Plaintiff's assertion that the presumption applies equally to a foreign entity. Defendant writes that "[t]he 'strong presumption in favor of plaintiff's choice of forum' applies with full force here." Plaintiff's Answering Brief at 9 (*quoting* Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254

(1981).  Plaintiff fails to note that in *Piper Aircraft*, the United States Supreme Court ruled that a

wrongful death action which arose from an airplane crash in Scotland should be dismissed on

forum non conveniens grounds and tried in Scotland.  In so ruling, the Supreme Court reversed

the Third Circuit Court of Appeals, which in turn had reversed the United States District Court

for the Middle District of Pennsylvania, which had granted the motion to dismiss.  The Supreme

Court wrote:

> The District Court acknowledged that there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trail in the alternative forum.  It held, however, that the presumption applies with less force when the plaintiff or real parties in interest are foreign.

> The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified . . . .  When the home forum has been chosen, it is reasonable to assume the choice is convenient.  When the plaintiff is foreign, however, this assumption is much less reasonable.  Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Id.* at 255.

Somewhat curiously and perhaps in an attempt to avoid an outcome similar to the one in

*Piper Aircraft*, Plaintiff appears to be arguing that it is the alter ego of its parent Brunswick

Corporation, a Delaware corporation when it writes, "[t]he case at bar is essentially an American

corporate citizen bringing suit against another American corporate citizen."  Plaintiff's

Answering Brief at 8.  Of course, Plaintiff is a German corporation with its principal place of

business in Eschborn, Germany. (Complaint ¶1); *see also* Ha yes Affidavit ¶ 7 ("Brunswick

Corporation is the parent company and sole stockholder of Brunswick GmbH, which is the

parent company and sole stockholder of Brunswick Bowling & Brunswick GmbH.  Brunswick

GmbH is a corporation organized under the laws of Germany.").

**C.    The balance of private and public favors favor dismissal.**

Plaintiff has shown the balance of private and public interests weigh in favor of dismissal of this action.

Defendant does not dispute: (1) most if not all witnesses and evidence concerning this dispute are located in Switzerland and Germany; (2) witnesses and evidence will have to be transported to Delaware from Europe; and (3) more relevant materials and easier access to them will be presented to the court if this case is tried in Switzerland. *See* Defendant's Opening Brief at 6-7; and Couchepin Affidavit ¶ 5.

Defendant's main argument regarding private considerations which the Court should consider in determining the pending motion relates to its assertion that "all of the pertinent documents are in English." Defendant's Answering Brief at 10. Plaintiff's assertion avoids the fact that because Switzerland is a trilingual country (French, German and Italian), it is common to "make business" in English when a French speaking company (in the case of Defendant) and a German speaking company (in the case of Plaintiff) are transacting business. Couchepin Affidavit, ¶6. In addition, many of the underlying documents relating to this dispute are in French and German and their authors reside in Switzerland and Germany.

Plaintiff makes no real attempt to dispute the arguments made by Defendant regarding the public interest factors which favor dismissal, *i.e.*, (1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized controversies decided at home, (3) the locus of the alleged culpable conduct, and (4) the unfairness of burdening citizens in an unrelated forum with jury duty. Defendant's Opening Brief at 7-8, *citing Piper Aircraft Co.*, 454 U.S. at 241 and *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988).

Defendant will not reiterate the arguments made in its opening brief with respect to the public interest factors which favor dismissal, except to emphasis that the scope of the alleged debt and the parties involved are issues more important to Switzerland than Delaware. *See Banco Nominees Ltd v. Iroquois Brands, Ltd.,* 748 F. Supp. 1070, 1077 (D.Del. 1990).  As in *Banco Nominees*, "[t]he only connection Delaware has to this matter is that the Defendant is incorporated here." *Id.*  Plaintiff respectfully submits that this Court should dismiss the present action on the grounds of forum non conveniens, just as the Court in *Banco Nominees* dismissed that action on the same grounds.

## II.    This Case Should Be Stayed Pending Resolution of the Swiss proceeding

As set forth above, Brunswick GmbH has initiated a legal proceeding in Switzerland by a commandement de payer ("summons to pay").  That proceeding remains open.  Brunswick GmbH can easily apply for a summary judgment at the Tribunal d'arrondissement de Nyon.

The issue of whether Bowling Switzerland is liable to Brunswick under the alleged contract and alleged account stated agreement can be decided promptly and completely in the Swiss proceeding.  If the present case is not stayed, the parties will conduct extensive and costly discovery that in all likelihood will be unnecessary once the Swiss proceeding is resolved.  Such potential waste will be avoided by staying this case. *See Banco Nominees* 748 F. Supp. at 1078.  In the present case, all of these factors weigh heavily in favor of a stay of this action pending resolution of the Swiss debt enforcement proceeding.

## Conclusion

Based on the foregoing, Defendant respectfully submits that the Court should grant its motion to dismiss this case on the grounds of forum non conveniens or, in the alternative, to stay this litigation pending resolution of the related debt enforcement proceeding initiated by Plaintiff in Switzerland.

Respectfully submitted,

  s/Arthur G. Connolly, III_____
Arthur G. Connolly, III (#2667)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
(302) 658-9141

*Attorneys for Bowling Switzerland, Inc.*

Dated:   November 8, 2007

#574233v1

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to counsel of record on the Court's CM/ECF registrants list for this case. I further certify that on November 8, 2007, I caused a copy of the foregoing document to be served upon the following counsel in the manner indicated:

### <u>BY E-MAIL AND HAND DELIVERY</u>

William D. Sullivan, Esquire
Elihu E. Allinson, III, Esquire
William D. Sullivan, LLC
4 East 8th Street, Suite 400
Wilmington, DE 19803
bill@williamdsullivanllc.com
zeke@williamdsullivanllc.com

### <u>BY E-MAIL</u>

David J. Fischer, Esquire
David P. Vallas, Esquire
Wildman, Harrold, Allen & Dixon LLP
235 West Wacker Drive, Suite 3000
Chicago, IL 60606
fischer@wildman.com
vallas@wildman.com

/s/ Arthur G. Connolly, III___
Arthur G. Connolly, III (#2667)

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BRUNSWICK GMBH,                    )
                                   )
     Plaintiff,                    )
                                   )
     v.                            )    Case No. 07-471 (JFF)
                                   )
BOWLING SWITZERLAND, INC.,         )
                                   )
     Defendant.                    )

## AFFIDAVIT OF GASPARD COUCHEPIN

I, Gaspard Couchepin, being duly sworn, do hereby depose and say:

1.    I am over the age of eighteen (18) years and understand the obligations of an oath.

2.    I am an attorney with the law firm of Schmidt, Jaton & Associés, Avocats in Geneva and Lausanne, Switzerland. I am duly licensed to practice law in Switzerland.

3.    My law firm represents Bowling Switzerland, Inc.

4.    I am familiar with the dispute between Brunswick, GmbH and Bowling Switzerland, as set forth in this action and the Swiss proceeding brought by Brunswick GmbH against Bowling Switzerland.

5.    It is my understanding that at least most if not all witnesses and evidence concerning this dispute are located in Switzerland and Germany. If this case were to proceed to trial in Delaware, witnesses and all evidence will have to be transported to Delaware from Europe. If the pending proceeding in Switzerland were to go forward, it would permit more relevant materials to be presented to the court and easier access to those materials if this case is tried in Switzerland.

6.       Because Switzerland is a trilingual country (French, German and Italian), it is common to "make business" in English when a French speaking company (in the case of Defendant) and a German speaking company (in the case of Plaintiff) are transacting business.

7.       I have attached hereto as Exhibit 1 portions of a treatise (in English) written by Dr. Stephen V. Berti, Attorney at law, Zurich, Switzerland, on Swiss Debt Enforcement and Bankruptcy Law, which includes an English translation of the Amended Federal Statutes on Debt Enforcement and Bankruptcy (SchKG).

8.       In Switzerland, a proceeding to enforce an unsecured claim is initiated with the filing of an "enforcement request" with a Swiss debt enforcement office. (Art. 67 of the SchKG). In this case, Plaintiff made an enforcement request with the Office des Poursuites et Faillites de Nyon-Rolle.

9.       On January 26, 2007, the Office des Poursuites et Faillites issued a "Commandement de payer" (a summons to pay) to Bowling Switzerland pursuant to Article 69 of the SchKG.

10.      On January 29, 2007, Bowling Switzerland made its objection (*i.e.*, opposition) to the summons to pay in accordance Article 74 of the SchKG. At this point, under Article 82 of the SchKG, Plaintiff could have applied for a summary proceeding at the Tribunal d'arrondissement de la Côte in Nyon to set aside Defendant's objection. This is an expedited proceeding in which the court will consider only written proofs, with no opportunity for the parties to present witnesses. (Art. 82 and 84 of the SchKG). The court sets aside the objection provisionally unless the debtor immediately shows *prima facie* evidence that it has a defense. (Art. 82 of the SchKG). The court renders its decision with 5 days. (Art. 84 of the SchKG). If the objection is provisionally set aside, Defendant has 20 days to file an ordinary court action for

2

a negative declaration of debt. (Art. 83 of the SchKG). If the Defendant does not file an action within 20 days or if the action for negative declaration is set aside, Plaintiff is free to commence seizure or bankruptcy proceedings in Switzerland. (*Id.*).

Further the affiant sayeth not.

Gaspard Couchepin

**Official Certification**

**_Legalization Nr 18'273.-_**

I, Martin HABS, Notary Public in Lausanne (Canton of Vaud, Switzerland), do hereby certify the authenticity by comparison with the original specimen deposited in the notary's office of the signature affixed hereabove by:

- Mr Gaspard COUCHEPIN, from Martigny, residing in Martigny, well known by the Notary Public.

Lausanne, this seventh day of November two thousand and seven.

3

APOSTILLE
(Convention de La Haye du 5 octobre 1961)

1. Pays: SUISSE

Le présent acte public

2. a été signé par ...... *Martin Thos* ........................

3. agissant en qualité de .. *notaire à lausanne* .....

4. est revêtu du sceau/timbre de ........................................

...... *Martin MARS NOTAIRE* ........................

Attesté

5. à Lausanne        6. le .. *7 novembre 2007* .........

7. par la Chancellerie d'Etat du Canton de Vaud

8. sous No .... *11962* .....

9. Sceau/timbre:              10. Signature
                              pr le Chancelier d'Etat:

                              *C. CHEVALLEY*



# EXHIBIT 1

# Part I

# Swiss Debt Enforcement and Bankruptcy Law

English translation of the Amended
Federal Statute on Debt Enforcement and Bankruptcy
(SchKG)

with an Introduction to Swiss Debt Enforcement and
Bankruptcy Law

by

## Dr. Stephen V. Berti
Attorney at law, Zürich



Schulthess Polygraphischer Verlag

KLUWER LAW INTERNATIONAL

ISBN Schulthess 3-7255-3651-1
ISBN Kluwer    90-411-0519-0

© Schulthess Polygraphischer Verlag AG, Zürich 1997

# I. Outline of Debt Enforcement Proceedings in Switzerland

1.  The Federal Statute on Debt Enforcement and Bankruptcy governs the enforcement of claims sounding in money and claims for the furnishing of security against private individuals and legal entities of private law, in Switzerland. The reader does not, however, learn this until article 38 paragraph 1. The enforcement of claims not sounding in money is governed by the law of the Canton of enforcement.

2.  Broadly speaking, two types of debt enforcement are envisaged:
The one is enforcement of an unsecured claim by a specific creditor leading to seizure and realisation of assets belonging to the debtor to the extent necessary to cover the claim. This type is known as special execution («Spezialexekution»). The other is general execution («Generalexekution»), which is the result of bankruptcy proceedings being opened against a debtor: All the bankrupt's assets form an estate, over which he may no longer dispose (article 204). The estate is realised and the proceeds distributed amongst the creditors according to their ranking (article 219). Bankruptcy proceedings are the form of debt enforcement adopted against debtors who are entered in the commercial register in one of the capacities set out in article 39 paragraph 1. Save in these cases, a natural person is only subject to bankruptcy proceedings if he so requests by declaring himself insolvent (article 191).

3.  Enforcement of a secured claim against all debtors, even those subject to bankruptcy proceedings, must be sought in the form of realisation of the collateral (articles 151 to 158), since all debtors may invoke the beneficium excussionis realis. Similarly, a freezing order may not be granted for the secured part of a claim (article 271 paragraph 1).

4.  Special proceedings exist for the enforcement of bills of exchange and cheques, providing for reduced possibilities of defence for the debtor and shorter deadlines. They only apply against a

XIII

debtor entered in the commercial register in one of the capacities set out in article 39 paragraph 1. They lead to bankruptcy.

5.    Proceedings to enforce an unsecured claim commence with the introductory phase («Einleitungsverfahren»). The first step is the filing of an enforcement request (article 67) with the debt enforcement office at one of the places of debt enforcement provided for by articles 46 to 55. The object of the request is the issuance of a summons to pay to the debtor. In Switzerland, any applicant can obtain such a summons to pay without having to make any showing as to the substance of his alleged claim. By the summons, the debtor is ordered either to file an objection within 10 days or pay the sum claimed within 20 days. If he does neither, the proceedings take their course, and lead to seizure or bankruptcy. If he, or someone else on his behalf, pays the sum claimed to the enforcement office, proceedings are discontinued.

6.    If the debtor files an objection, the creditor has three possibilities depending on what evidence he has for his claim:

–    If the creditor has neither an enforceable judgment against the debtor, nor a written acknowledgement of debt signed by him, he must bring an action within one year after service of the summons to pay (article 88) to the ordinary civil or administrative courts to confirm his claim and have the debtor's objection set aside (article 79). If the creditor fails to comply with the deadline, or if his action is definitively rejected, enforcement proceedings elapse.

–    If the creditor has an enforceable judgment against the debtor, he may apply in summary proceedings before the competent court at the place of enforcement to *definitively* set aside the debtor's objection (articles 80 and 81).

–    If the creditor has a written acknowledgement of debt signed by the debtor, he may apply in summary proceedings to the competent court at the place of enforcement to *provisionally* set aside the debtor's objection (articles 82). A creditor uncertain of his prospects in such proceedings might prefer neither to chance his luck nor to waste time, and proceed from the onset according to article 79.

XIV

7. If the objection is provisionally set aside, the onus is on the debtor to file an ordinary court action for a negative declaration of debt within 20 days (article 83 paragraph 2). If he fails to do so, or if the action is dismissed, his objection is definitively set aside (article 83 paragraph 3), and the way is open for seizure or bankruptcy, as the case may be. If the action for a negative declaration is successful, the enforcement proceedings are discontinued.

8. Once the objection has been set aside, or if none was filed, the creditor can request continuation of the enforcement proceedings (article 88). Depending on the person of the debtor, this request leads either to seizure of assets (articles 89 to 115) or the opening of bankruptcy proceedings (articles 159 to 176 in normal cases).

9. Seized assets are realised pursuant to articles 116 to 150. If insufficient assets are at hand to satisfy the applicant creditor's claim, he is issued with a certificate of shortfall which has the effects set out in article 149. Claims evidenced by a certificate of shortfall were formerly not subject to a statute of limitation, but under the revised law in force since 1st January 1997 they become statute-barred twenty years after issuance of the certificate, and against the debtor's heirs at the latest one year after the opening of the inheritance proceedings.

10. The opening of bankruptcy proceedings has the effects on the debtor's assets set out in articles 197 to 207. All seizable assets owned by the debtor at the time of the opening of the bankruptcy proceedings form, irrespective of where they are situated, one sole estate (the bankrupt estate) destined for the satisfaction of the creditors. Assets which accrue to the debtor up until the end of the bankruptcy proceedings likewise form part of the estate (article 197). All other enforcement proceedings against the debtor cease and new enforcement proceedings relating to claims which arose before the opening of bankruptcy proceedings are not permissible, with the exception of the enforcement of pledges given by third parties. Enforcement proceedings for claims which arose after the declaration of bankruptcy are continued during the bankruptcy proceedings by seizure or by realisation of pledges (article 206).

XV

11. The effects of the bankruptcy on creditors' rights are set out in articles 208 to 220. The opening of bankruptcy proceedings has the consequence that all obligations of the debtor become due against the bankrupt estate with the exception of those which are secured by mortgages on his real estate. The creditor can claim the amount of the debt, interest up until the date of the opening of bankruptcy proceedings, and the costs of enforcement (article 208 paragraph 1). Claims which do not have as their object a sum of money are converted into a monetary claim of corresponding value (article 211 paragraph 1). The order of distribution to the creditors is prescribed by article 219.

12. Bankruptcy proceedings are governed by articles 221 to 270. There are three possibilities: ordinary proceedings (article 232–270), summary proceedings (article 231), and no proceedings at all (article 230), due to lack of funds even to pay for summary proceedings. Since bankruptcy proceedings are a prerequisite for an assignment, pursuant to article 260, of «difficult assets» such as directorship liability claims (articles 754 to 761 Code of Obligations) or actions for avoidance (articles 285 to 292), creditors interested in obtaining one have to advance the costs so that at least summary proceedings can be carried out.

13. In ordinary proceedings there are two meetings of creditors. At the first meeting the creditors can, if there is a quorum, appoint a private bankruptcy administration instead of the bankruptcy office, and a creditors' committee (article 237 paragraphs 2 and 3). Claims against the bankrupt estate are listed in a schedule of claims (articles 244 to 251), which serves as a basis for distribution. Realisation of assets is governed by articles 252 to 260, distribution by articles 261 to 269.

14. Articles 271 to 281 deal with freezing orders. There are five grounds for obtaining a freezing order against assets located in Swiss territory: (i) if the debtor has no fixed domicile; (ii) if the debtor is concealing his assets, absconding or making preparations to abscond so as to evade the fulfilment of his obligations; (iii) if the debtor is passing through or belongs to the category of persons who visit fairs and markets, for claims which by their nature must be fulfilled at once; (iv) if the creditor holds a provisional or definitive

XVI

# EXHIBIT 1

# Part II

## V. Commencement of Enforcement Proceedings

Article 67    A. Application for the Commencement of Enforcement Proceedings

[1] The application for the commencement of enforcement proceedings is made orally or in writing to the debt enforcement office. It must contain:
1. the name and address of the creditor and, if applicable, his representative and, if the creditor lives abroad, his elected domicile in Switzerland. In the absence of any other indication the creditor is presumed to have elected domicile on the premises of the enforcement office;
2. the name and address of the debtor and, if applicable, his legal representative; in the case of enforcement against a deceased's estate it must be indicated on which heirs service is to be effected;
3. the amount of the claim or the amount for which the furnishing of security is claimed, expressed in Swiss currency; where the claim is interest bearing, the rate of interest and the date from which interest is claimed;
4. the document evidencing the claim and its date; in the absence of such document the reason for the claim.

[2] If the claim is secured by collateral, the details required pursuant to article 151 must also be supplied.

[3] The creditor may request to be provided, without charge, with a confirmation of receipt of the application for the commencement of enforcement proceedings.

Article 68    B. Enforcement Costs

[1] The debtor bears the enforcement costs, which the creditor advances. If such advance is not forthcoming, the enforcement office can for the time being refrain from making enforcement acts and notify the creditor accordingly.

25

[5] The supervisory authority can request the court to order a separation of goods.

## VII. Enforcement against a Debtor who has a Legal Representative or a Curator

### Article 68c    1. Debtor under parental or tutelar Control

[1] If the debtor is under parental or tutelar control, enforcement notices are served on the legal representative; if the debtor has no legal respresentative, they are served on the competent guardianship authority.

[2] If the claim is derived from an authorised business or relates to the administration of the debtor's wages or free assets (articles 321 paragraph 2, 323 paragraph 1, 412 and 414 Civil Code), enforcement notices are served on the debtor and the legal representative.

[3] If the debtor has a tutor (article 395 paragraph 2 Civil Code) and the creditor demands satisfaction not only from income but also from assets, enforcement notices are served on both the debtor and the tutor.

### Article 68d    2. Debtor under Curatorship

If the debtor is under curatorship and the appointment has been published or notified to the enforcement office (article 297 Civil Code) the enforcement notices are served:

1. on the curator and on the holder of parental control;
2. where the debtor has a curator pursuant to articles 392 to 394 Civil Code: on the debtor and the curator.

### Article 68e    3. Limitation of Liability

If the debtor is liable with his free assets, it can be pleaded in opposition proceedings (articles 106 to 109) that a seized asset is not part thereof.

27

Article 69

# VIII. Summons to Pay and Objection

### Article 69    A. Summons to Pay    a. Contents

[1] Upon receipt of the enforcement request, the enforcement office issues the summons to pay.

[2] The summons to pay contains:
1. the particulars set out in the enforcement request;
2. the order to pay the creditor the amount of the debt and costs within 20 days or, where the request is for security, to furnish such within the same period;
3. notice that the debtor must file an objection within 10 days if he wishes to contest all or part of the debt or the creditor's right to execute it in enforcement proceedings;
4. notice that if the debtor neither complies with the summons to pay nor files an objection, the enforcement proceedings will take their course.

### Article 70    2. Issuance

[1] The summons to pay is issued in two copies. One copy is for the debtor, the other for the creditor. If the two copies are not identical, the debtor's copy prevails.

[2] In the case of enforcement proceedings against joint and several debtors, a separate summons to pay is served on each.

### Article 71    3. Time of Service

[1] The summons to pay is served on the debtor after receipt of the enforcement request by the enforcement office.

[2] If an office receives several enforcement requests against the same debtor, it must serve all the summons to pay at the same time.

[3] Enforcement requests must be treated strictly in turn.

### Article 72    4. Form of Service

[1] The summons to pay is served by an enforcement official, an employee or by post.

28

[2] The person serving the summons must record on both original copies the date and the person to whom service was made.

## Article 73    B. Production of Evidence

[1] Upon the debtor's request, the creditor is invited to produce evidence of the claim to the enforcement office for inspection within the deadline for filing an objection.

[2] If the creditor fails to do so, the deadline for filing an objection is not interrupted. However, in subsequent litigation the court shall in allocating costs take into account the fact that the debtor had no opportunity to inspect the evidence.

## Article 74    C. Objection    1. Deadline and Form

[1] If the respondent wishes to file an objection, he must immediately inform the person serving the summons to pay thereof or inform the debt enforcement office orally or in writing thereof within 10 days of service.

[2] If the respondent objects to only part of the claim, he must specify exactly to how much, failing which the whole claim is deemed to be denied.

[3] The respondent may request to be provided, free of charge, with confirmation that he has filed an objection.

## Article 75    2. Reasons

[1] No reasons need be given for the objection. If reasons are given, the right to give further reasons is not deemed waived.

[2] If the debtor wishes to deny a coming into new fortune, he must expressly do so when filing the objection, otherwise such defence is precluded.

[3] The provisions governing objections out of time (article 77) and in proceedings for the enforcement of a bill of exchange (article 179 paragraph 1) are reserved.

29

## Article 76

### Article 76    3. Notification to the Creditor

[1] The creditor is notified of the contents of the objection on the copy of the summons to pay intended for him; if no objection was filed, this fact is recorded.

[2] The copy is conveyed to the creditor immediately after the objection has been filed, and, where none was filed, immediately after the elapse of the deadline for objecting.

### Article 77    4. Objection out of Time in the Event of a Change of Creditor

[1] If the creditor changes during the course of enforcement proceedings, the respondent may file an objection out of time, providing the proceeds have not yet been distributed or bankruptcy proceedings opened.

[2] The respondent must file the objection in writing with the court at the place of enforcement within 10 days of learning of the change of creditor, giving reasons and making a *prima facie* showing of his defences against the new creditor.

[3] Upon receipt of the objection the court can order a stay of the enforcement proceedings. Having heard the parties it decides upon the admissibility of the objection.

### Article 78    5. Effects

[1] As a consequence of the objection the enforcement proceedings are stayed.

[2] If the debtor contests only part of the claim, enforcement proceedings are continued for the uncontested part.

### Article 79    D. Setting aside the Objection
###                 1. In ordinary civil or administrative Proceedings

[1] If the respondent files an objection, the creditor must pursue his claim in ordinary civil or administrative proceedings. He may only apply for continuation of the enforcement proceedings upon production of a judg-

30

ment which expressly sets aside the objection and which has become *res judicata*.

[2] If the judgment was rendered in another Canton the enforcement office, upon receipt of the request to continue, sets the debtor a deadline of 10 days for pleading defences to the judgment pursuant to article 81 paragraph 2. If the debtor pleads a defence, the creditor must apply to the competent court at the place of enforcement to set aside the objection before requesting the continuation of the enforcement proceedings.

## Article 80      2. In Summary Proceedings

### a. Title to have the Objection set aside

[1] If the claim is based on an enforceable court judgment, the creditor may apply to the court to definitively set aside the objection in summary proceedings.

[2] The following are equivalent to a court judgment:
1. settlements and recognitions of debt made in court;
2. orders and decisions of Federal administrative authorities for payments of money or furnishing of security;
3. within the Canton of the enforcement proceedings, orders and decisions of cantonal administrative authorities concerning public law obligations such as taxes, provided that the law of that Canton places such orders and decisions on an equal footing to a court judgment in the sense of this paragraph. ·

## Article 81      b. Defences

[1] If the claim is based on an enforceable judgment of a Federal authority or of an authority of the Canton in which enforcement proceedings have been commenced, the court sets the objection aside definitively unless the respondent proves by means of documents that since the judgment was rendered the debt has been discharged or deferred, or unless the respondent invokes the statute of limitations.

[2] If the enforceable judgment was rendered in another Canton, the respondent may furthermore plead that he was not properly notified of the proceedings or was not properly legally represented.

[3] If the judgment was rendered abroad in a country with which Switzerland has concluded a treaty on the reciprocal recognition of judgments, the respondent may plead any defences permitted by such treaty.

31

## Article 82

**Article 82**   3. By having the Objection set aside
provisionally in Summary Proceedings
a. Prerequisites

[1] If the claim is based on a recognition of debt contained in a notarised deed or a signed document, the creditor may apply that the objection be set aside provisionally.

[2] The court sets the objection aside provisionally unless the debtor immediately shows that *prima facie* he has a defence which controverts the recognition of debt.

## Article 83   b. Effects

[1] Once the objection has been set aside and the deadline to pay has elapsed, the creditor may request, depending on the person of the debtor, either the provisional seizure of assets or the drawing up of an inventory pursuant to article 162.

[2] Within 20 days of the objection being set aside, the debtor may bring an action in ordinary court proceedings for a declaration that the claim is unfounded.

[3] If the debtor fails to bring such action or if the action is dismissed, the objection is set aside definitively and a provisional seizure becomes definitive.

[4] The deadline pursuant to article 165 paragraph 2 does not run during the time between the bringing of an action for a negative declaration and the court's judgment. The bankruptcy court annuls the effects of the inventory if the prerequisites for it are no longer fulfilled.

## Article 84   4. Summary Proceedings to set aside the
Objection

[1] The court at the place of the enforcement proceedings decides applications to set aside the objection in summary proceedings.

[2] Immediately upon receipt of the application the court invites the respondent to submit observations orally or in writing, and renders its judgment within 5 days.

32